DUANE and others *v.* STEAM-TUG EMMA J. KENNEDY, etc.

*(District Court, S. D. New York.   October 8, 1880.)*

1. COLLISION—SLOOP AND BRIG LYING IN SAME PIER—NARROW CHANNEL — REFUSAL OF SLOOP TO HAUL OUT.— A sloop and brig were lying stern to stern on the north side of the same pier, about 50 feet apart, the sloop being just inside the pier, with her bow towards the river, while the brig was further up the slip, with her starboard side to the pier.   The brig drew about 14 feet of water, and there was not sufficient depth of water to haul her out, except along the dock where the sloop was lying.   The sloop refused to pull out by the end of the pier in order to permit the brig to be hauled out by a tug   *Held,* that the tug was liable for all damage caused by an attempt to pull the stern of the bring by the stern of the sloop as she lay at the pier.

  The tug could have herself hauled the sloop out of the way first or have sent for a harbor-master to compel the sloop to move away.

2. SAME—COSTS.—*Held,* further, under these circumstances, and where the sloop had only proved an insignificant part of the damages claimed, that the libellants were not entitled to costs.—[ED.

*F. A. Wilcox,* for libellants.

*W. H. McDougall,* for claimants.

CHOATE, D. J.   This is a libel brought to recover damages for a collision between a brig in tow of the steam-tug and the libellants' sloop, the S. S. Howell, on the eighth day of September, 1879.   The sloop was lying on the north side of the pier at the foot of Thirtieth street, North river, with her bow towards the river, and just inside the end of the pier.   The brig was lying further up the slip, with her starboard side to the pier.   They were thus lying stern to stern, with a space

of about 50 feet between them. While they were in this position the tug came into the slip to tow the brig out into the rver. The tide was about half flood. The brig drew about 14 feet of water, and there was not sufficient depth of water to haul her out, except along the dock where the sloop was lying. Those in charge of the tug and of the brig requested those in charge of the sloop to haul the sloop out by the end of the pier, so that they could get the brig out. This, those in charge of the sloop refused to do, with abusive language. The master of the tug then tried to haul the brig out around the sloop over the mud, which is there deep and soft, but he found it impossible to do so. She careened and slipped back. The deepwater there is confined to a narrow channel along the dock, about the width of a vessel. In thus trying to get the brig out, her stern came in contact with the stern of the sloop.

The libel avers that the tug "carelessly and recklessly pulled the stern of the brig against the stern of the sloop with such force and violence he tore a cavil off the sloop and started the timbers to which the cavil was fastened, and forced and lifted the stern of the sloop off from her timbers and parted three lines, one of which was new, and did other extensive damage and injuries to the sloop, and carried her from her berth towards the river."

The libel also alleges that the cost of repairing the sloop will be about $250, and claims eight days' demurrage, at the rate of $20 a day. There is a great deal of conflict in the evidence as to the force with which the vessels came together, and the amount and nature of the injury done to the stern of the sloop while they were together. Witnesses on the part of the sloop do indeed testify that when they came together the taffrail was broken, timbers and stanchions shattered, and the stern lifted up eighteen inches or two feet, and the lines parted. Witnesses quite as credible, certainly, on the part of the brig, having equal opportunities to observe the effect of the blow, deny that any damage whatever was done, or any rail or timbers broken, or the stern lifted up, or any line parted at that time. Their account is that the sterns came

together very lightly, with fenders between; that afterwards, and when those on the sloop had again refused to haul their vessel away, the tug endeavored to pull the stern of the brig by the stern of the sloop, those on the brig aiding this movement by pushing; that the injury was done in this attempt; that one line, not a new one, between the sloop and the pier parted, and a cavil on the sloop was broken off; that no other damage was done.

It appears by the testimony of the ship carpenter, who repaired the sloop soon afterwards, that when he saw her the rail, stanchions, and timbers were injured in some such way as is described by the witnesses from the sloop, but it also appears that later on the same day, the eighth of September, she was in collision with another vessel. It is quite possible, upon the evidence, that the principal injuries in her stern were then sustained by her being driven against the pier. I am unable to credit the statement of her witnesses that the stern was lifted up by the blow as they describe. Not only are they contradicted on this point, but it is almost impossible that such should have been the effect of the blow even if it was as violent as the witnesses testify to. The brig was much higher out of water. Both vessels had overhanging sterns, so that the tendency would have been not to lift up but to crowd down the stern of the sloop. And the harder the blow the greater would this tendency be. Upon the whole evidence I am not satisfied that any damage was done by the tug's endeavor to pull the stern of the brig by the stern of the sloop, except the parting of one line and the breaking of the cavil. For this damage the tug is liable. She had no right to use force enough to injure the sloop, and was not justified in doing so by the unreasonable refusal of the sloop to haul away. She could have herself hauled the sloop out of the way first, or, as she did afterwards, have sent for a harbor-master to compel her to move away. The libellants are entitled to a decree for the damage found as above, chargeable to the carelessness of those in charge of the tug, but without costs, because they were in the wrong in refusing to get out of the way when requested and thereby brought the

trouble on themselves, and have failed to prove more than an insignificant part of the damages claimed, and in fact appear to have instituted a frivolous suit.

Decree accordingly.